IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JEM TRANSPORT, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 07-686C |
| v. | ) | (Judge Bush) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S ANSWER AND COUNTERCLAIM**

As its answer to the complaint, defendant admits, denies, and alleges as follows:

1. The allegations contained in paragraph 1 constitute conclusions of law, and plaintiff's characterization of its complaint, to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

2. Denies the allegations contained in paragraph 2 for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

3. Admits the allegation contained in the first sentence of paragraph 3 that JEM Transport is an experienced contractor for the Postal Service; otherwise denies the remaining allegations in the first sentence of paragraph 3. Denies the allegations contained in the second sentence of paragraph 3. Denies the allegations contained in the third sentence of paragraph 3 for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

4. Admits the allegation contained in the first sentence of paragraph 4 to the extent it alleges that on September 22, 2006, the contracting officer verbally notified the plaintiff that he would be terminating contract HCR 33434 for default effective September 29, 2006; otherwise denies the remaining allegations contained in the first sentence of paragraph 4. Admits the

allegations contained in the second and third sentences of paragraph 4 to the extent supported by the notification of termination cited; otherwise denies the allegations contained in the second and third sentences of paragraph 4. Denies the allegations contained in the fourth sentence of paragraph 4.

5. Denies.

6. Admits the allegations contained in the first and second sentences of paragraph 6 to the extent supported by the Form 5500s cited; otherwise denies the allegations contained in the firs and second sentences of paragraph 6. Denies the allegations contained in the third and fourth sentences of paragraph 6 for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

7. The allegations contained in the first sentence of paragraph 7 are plaintiff's characterization of its case, to which no response is required; to the extent they may be deemed allegations of fact, they are denied for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted insofar as the allegations contained therein are vague and ambiguous. Admits the allegation contained in the second sentence of paragraph 7 to the extent it alleges that Postal Service officials exercise discretion in the issuance of Form 5500s; denies the remaining allegations contained in the second sentence of paragraph 7 for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted. Denies the allegations contained in the third sentence of paragraph 7 for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted. The allegations contained in the fourth sentence of paragraph 7 constitute conclusions of law, and plaintiff's characterization of its complaint, to which no response is required; to the extent they may be

deemed allegations of fact, the allegations contained in the fourth sentence of paragraph 7 that a lack of Form 5500s does not always mean that a contractor performed superior service are admitted.

8. The allegations contained in paragraph 8 constitute conclusions of law, and plaintiff's characterization of its complaint, to which no response is required; to the extent they may be deemed allegations of fact, the allegations contained in paragraph 8 that "JEM TRANSPORT's successor, Postal Carrier Corporation, incurred more 5500's than JEM TRANSPORT" are denied for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted insofar as the complaint does not specify which time period forms the basis for this comparison. Defendant admits the allegations contained in paragraph 8 that a reprocurement contract was awarded to Postal Carrier Corporation at an annual rate of $837,231.89; otherwise denies the allegations contained in paragraph 8.

9. The allegations contained in the first sentence of paragraph 9 constitute conclusions of law, to which no response is required; to the extent they may be deemed allegations of fact, they are denied. Denies the allegations contained in the second sentence of paragraph 9 for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted insofar as the complaint does state whose "three decades of exceptional service" were allegedly not taken into consideration by defendant.

10. The allegations contained in the first sentence of paragraph 10 constitute plaintiff's recitation of a legal standard, to which no response is required; to the extent they may be deemed allegations of fact, they are denied. The allegations contained in the second sentence of paragraph 10 constitute conclusions of law, to which no response is required; to the extent

they may be deemed allegations of fact, they are denied.

11. The allegations contained in the first sentence of paragraph 11 constitute conclusions of law, and plaintiff's characterization of its complaint, to which no response is required; to the extent they may be deemed allegations of fact, the allegation contained in the first sentence of paragraph 11 that JEM Transport was the lowest bidder for Postal Service contract no. HCR 331M6 is denied; otherwise admits the allegation that the contracting officer noted the default decision when awarding the contract in the first sentence of paragraph 11, to the extent supported by the July 5, 2007 debriefing letter provided to plaintiff. Denies the allegations contained in the second sentence of paragraph 11 insofar as the Postal Service Ombudsman issued his decision in this matter on November 9, 2007.

12. Admits the allegation contained in paragraph 12 that the contracting officer withheld $33,091.19 from JEM Transport; the remaining allegations contained in paragraph 12 constitute conclusions of law, to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

13. Denies that plaintiff is entitled to the relief set forth in its prayer for relief immediately following paragraph 12 of the complaint, or to any relief whatsoever.

14. Denies each and every allegation not previously admitted or otherwise qualified.

DEFENDANT'S COUNTERCLAIM

(Breach of Contract)

15. This Court has jurisdiction over defendant's counterclaim pursuant to 28 U.S.C. § 2508.

16. On June 7, 2006, the United States Postal Service renewed Highway Contract

Route ("HCR") contract no. 33434 with the then contractor, Melchiori & Riceputo, Inc. The term of the renewed contract was to begin on July 1, 2006, and end on December 31, 2006.

17. The contract rate for the renewed HCR 33434 was $704,425.57 per year.

18. HCR 33434 requires the contractor to transport mail by tractor-trailer throughout the day and night on routes between the Postal Service's Processing and Distribution Center ("P&DC") at West Palm Beach, Florida, and Boca Raton, Florida, and between the West Palm Beach P&DC and Deerfield Beach, Florida. The contract lists 54 different trips that are numbered 1 through 46 and 49 through 56. The contractor has to make as many as 22 round trips a day from Monday through Saturday and ten one-way trips on Sundays and holidays. The contractor is required to use seven tractor-trailers to perform the contract.

19. HCR 33434 contains at Section 2.3.1.m the following clause:

> m. *Termination for Default.* The Postal Service may terminate this contract, or any part hereof, for default by the supplier, or if the supplier fails to provide the Postal Service, upon request, with adequate assurances of future performance. In the event of termination for default, the Postal Service will not be liable to the supplier for any amount for supplies or services not accepted, and the supplier will be liable to the Postal Service for any and all rights and remedies provided by law. The debarment, suspension, or ineligibility of the supplier, its partners, officers, or principal owners under the Postal Service's procedures (see the Postal Service's *Supplying Principles and Practices* (March 29, 2006) may constitute an act of default under this contract, and such act will not be subject to notice and cure pursuant to any termination of default provision of this contract. If it is determined that the Postal Service improperly terminated this contract for default, such termination will be deemed a termination for convenience.

20. HCR 33434 also incorporated by reference at Section 2.3.1.s(8) clause B.69, *Events of Default,* from the Postal Service's Interim Internal Purchasing Guidelines. This clause reads in its entirety as follows:

> Clause B-69 *Events of Default* (May 2005) (B.1.2)

The supplier's right to perform this contract is subject to termination under the clause entitled Termination for Default. The following constitute events of default, and this contract may be terminated pursuant to that Clause.

a. The supplier's failure to perform service according to the terms of the contract;

b. If the supplier has been administratively determined to have violated Postal laws and regulations and other laws related to the performance of the service;

c. Failure to follow the instructions of the contracting officer;

d. If the supplier transfers or assigns his contract, except as authorized herein, or sublets the whole or a portion of this contract contrary to the applicable provisions of the U.S. Postal Service Interim Internal Purchasing Guidelines or without any required approval of the contracting officer;

e. If the supplier combines to prevent others from proposing for the performance of Postal Service contracts;

f. The supplier's failure properly to account, deliver and pay over moneys, mail and other property pursuant to this contract;

g. If the supplier or a partner, if the supplier is a partnership, or a principal owner or corporate officer, if the supplier is a corporation, (a) has been or is, during the term of the contract, convicted of a crime of moral turpitude affecting his or her reliability or trustworthiness as a mail transportation supplier, such as any form of theft, fraud, embezzlement or assault, or (b) associates with known criminals, or (c) otherwise is not reliable, trustworthy or of good character.

h. Any breach by the supplier or subcontractor of any warranty contained in PS Form 7465, Transportation Services Subcontract;

i. If the supplier allows any employed individual to operate a vehicle in connection with this contract who has a record indicating that it would be hazardous for that individual to do so;

j. If the supplier's transportation equipment is insufficient, inadequate, or otherwise inappropriate for the service;

k. If the supplier employs any individual in connection with the contract contrary to the instructions of the contracting officer;

l. If at any time the supplier, its principal owners, corporate officers or personnel are disqualified by law or regulation from performing services under this contract,

and upon notice thereof, the supplier fails to remove any such disqualification;

m. If the supplier fails to establish and maintain continuously in effect insurance as required by this contract, or fails to provide proof of insurance prior to commencement of service and thereafter as required by the contracting officer;

n. If the supplier fails to provide any notification of a change in principal owners or corporate officers which this contract may require; or

o. If the supplier materially breaches any other requirement or clause of this contract.

21. Section B.1.4.g of HCR 33434 states that the "supplier will be required to report in sufficient time to load and depart on schedule."

22. Section B.3.a of HCR 33434 states that the "supplier shall carry all mail tendered for transportation under this contract, whatever may be its size and weight, with certainty, celerity, and security, in accordance with the operating schedule and between the points fixed in the schedule, as modified from time to time pursuant to this contract."

23. On or about July 19, 2006, HCR 33434 was novated, effective July 1, 2006, and the plaintiff, JEM Transport, became the new contractor in lieu of Melchiori & Riceputo, Inc.

24. After JEM Transport began performing HCR 33434, the quality of service on the contract noticeably deteriorated. Numerous Form 5500s, i.e., Postal Service forms that document service irregularities, were issued to JEM Transport for various reasons including lateness and misdelivery of mail, as well as other equipment and service irregularities. JEM Transport was repeatedly advised that it needed to take immediate measures to improve its performance.

25. On July 3, 2006, the Administrative Official for HCR 33434, Rose M. Herzog, had a telephone discussion with JEM Transport regarding poor contract performance. Subsequently, on July 6, 2006, Ms. Herzog had a second telephone discussion with JEM

Transport regarding recent irregularities. Ms. Herzog then conducted a person-to-person formal conference with JEM Transport on August 4, 2006 regarding the unsatisfactory operation of HCR 33434. On August 15, 2006, Eric D. Chavez, Plant Manager, West Palm Beach P&DC, issued to JEM Transport a *Final Request For Service Improvement*. Ms. Herzog conducted a third telephone conversation with JEM Transport on August 15, 2006 regarding its recent poor performance.

26. On September 12, 2006, the contracting officer, Booby L. Mays, issued a *Letter of Warning from the Contracting Officer* to JEM Transport for its continued failure to perform service according to the terms of its contract.

27. On September 22, 2006, due to the continuing issuance of Form 5500s to JEM Transport, the contracting officer verbally advised JEM Transport in a telephone conversation that he would shortly be terminating its contract, effective September 29, 2006. On September 25, 2006, the contracting officer sent to JEM Transport a final decision of the contracting officer that terminated for default HCR 33434, pursuant to the *Events of Default* clause of the contract, for failure to perform service according to the terms of the contract, effective the close of business on Friday, September 29, 2006.

28. By failing to perform HCR 33434 according to the terms of the contract, JEM breached its contract with the Postal Service.

29. Following the termination of JEM Transport as the contractor for HCR 33434, the Postal Service contracted with Postal Carrier Corporation to perform HCR 33434 on a temporary basis. Initially, Postal Carrier Corporation's annual rate to perform the contract on a temporary basis was $984,767.63. However, Postal Carrier Corporation's annual rate was renegotiated to

$837,231.89 on December 1, 2006.

30. The difference between JEM Transport's annual contract price for HCR 33434, i.e., $704,425.57, and Postal Carrier Corporation's annual contract price, i.e., $837,231.89, for a period of 90 days, the amount of time determined necessary by the contracting officer to award a replacement contract for HCR 33434 on a non-emergency basis, was $32,746.76. In addition, the Postal Service incurred $344.43 for various administrative costs incurred in the process of reprocuring HCR 33434.

31. Therefore, as a result of plaintiff's breach of its contract by its failure to perform the contract, the Postal Service has suffered at least $33,091.19 in damages.

32. Accordingly, on or about February 22, 2007, the contracting officer issued a final decision in which he determined that the Postal Service had incurred $33,091.19 in excess reprocurement costs as a result of the termination for default of JEM Transport's contract. The Postal Service then withheld from JEM Transport $33,091.19 in regular contract payments that JEM Transport had accrued before its contract was terminated.

32. As a result of its breach of HCR 33434, the plaintiff is liable to the Postal Service for not less than $33,091.19.

WHEREFORE, defendant request that the Court enter judgment in favor of defendant in the amount of $33,091.19, plus interest as provided by law, that the complaint be dismissed, and that defendant be granted such other and further relief as the Court may deem just and proper.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s Mark Melnick
MARK MELNICK
Assistant Director

/s Courtney E. Sheehan
COURTNEY E. SHEEHAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L St., NW
Washington, D.C. 20530
Tele: (202) 305-7573
Fax: (202) 514-8624

OF COUNSEL:

MICHAEL F. KIELY
United States Postal Service
Commercial and Appellate Litigation
475 L'Enfant Plaza, SW
Room 6004
Washington, DC 20260

January 4, 2008

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 4th day of January, 2008, a copy of the foregoing "DEFENDANT'S ANSWER AND COUNTERCLAIM" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

s/ Courtney E. Sheehan